## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

U.S. EQUAL EMPLOYMENT ) 
OPPORTUNITY COMMISSION, )
)
    Plaintiff, )
)   Case No. 3:24-CV-02152-DWD
vs. )
)
HELIA HEALTHCARE OF SALEM, LLC )
D/B/A DOCTORS NURSING AND )
REHABILITATION CENTER, )
)
    Defendant.

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendant Helia Healthcare of Salem, LLC's ("Helia") Motion for Summary Judgment. (Doc. 25). Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC"), brings claims against the Defendant for discrimination due to harassment and retaliation under Title VII of the Civil Rights Act of 1964, as well as two claims under the Americans with Disabilities Act for failure to accommodate and constructive discharge. (Doc. 1, pgs. 4–6). For the reasons detailed below, Defendant's motion is **DENIED**.

### BACKGROUND

The following facts are not in dispute by the parties. DeeAnn Smith ("Smith") began working for Defendant Helia in or about July of 2018 at a skilled nursing facility in Salem, Illinois. In February of 2019, Smith's direct supervisor, Tony Greene, walked behind Smith and slapped her on the buttocks while she was distributing medications to

a patient. Smith reported the incident the following day to Rebecca Morris. Morris told Smith that she would tell Sherry Baker, Defendant's facility administrator, and that it "would be taken care of." Around a month later, in early March of 2019, Greene attempted to kiss Smith while in his office. Smith pushed Greene away, and Greene responded by saying "what your husband doesn't know won't hurt him." Smith then immediately reported the attempted kiss and statement to Morris, who again told her that Sherry Baker would be made aware of the incident.

Following Smith's initial report of the slapping incident to Morris, but prior to the attempted kiss incident, Smith alleges that Greene confronted her and accused her being unable to keep her mouth shut. Shortly thereafter, Greene cut Smith's hours. Following the attempted kiss incident, on March 12, 2019, Smith requested FMLA leave so that she could undergo surgery for an ankle injury she sustained at her prior job. Smith hurt her ankle while at a previous job before working for Defendant and she testifies that she alerted Helia to her injury and the possibility of her taking time off for surgery in her job interview. Although Smith testified that her ankle did not restrict her ability to work, she did not need assistance to perform her work, and that her injury did not make any daily activities difficult, Smith also testified that she would have pain when walking and difficulty squatting and lifting.

Her FMLA leave request was denied because she was not yet eligible due to the length of her tenure. Defendant's employees told Smith she would have to resign her position and reapply after her surgery if she wished to take time off from work for surgery. Smith was upset that her leave was denied but refused to resign her position.

2

She then went to the office of Sherry Baker, the Defendant's administrator, and told her about the incidents with Greene. She then left her shift early and asked another nurse who was already working to cover her patients. Baker stated that Smith "quit" or "fired herself" by walking off the job in the middle of her shift. Smith testified that she just needed to go home early because she was upset and needed time to think about what she was going to do. Smith learned that she was no longer employed the next day when Baker called her and said she was banned from the facility "due to the allegations you made against Tony [Greene]." Baker testified that she made that statement because Smith had left work in the middle of her shift and was told that Smith was coaching the patient that witnessed the initial incident of Greene slapping her posterior.

## APPLICABLE LAW AND LEGAL STANDARDS

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, a non-movant must do more than rest upon the allegations made in the complaint to withstand summary judgment. *See e.g., Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch.*

3

*Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("[T]o withstand summary judgment, the non-movant...may not rely on vague, conclusory allegations."); *see also, Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

### ANALYSIS

**1. Sexual Harassment**

Plaintiff's first claim is for sexual harassment in violation of Title VII. To prove a sexual harassment claim under Title VII, a plaintiff must show: (1) her work environment was objectively and subjectively offensive, (2) the harassment was based on her gender, "(3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018) citing *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 900 (7th Cir. 2018. Only the third element is contested by Defendant's Motion.

Hostile work environment claims are considered "under a 'totality of the circumstances' approach." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Harassment by a supervisor is more likely to be severe. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). "The Supreme Court standard dictates that the [harassment] must be only so severe or pervasive so as to affect the terms and conditions of employment." *Johnson*, 892 F.3d at 901 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment, Title VII is violated." *Harris*, 510 U.S. at 21 (internal quotations and citations omitted).

Defendant Helia relies on *Szany v. Garcia*, No. 2:17-CV-74-PPS-JPK, 2020 WL 2767356, at *14 (N.D. Ind. May 28, 2020), arguing that Greene's slap of Smith's buttocks and his attempt to kiss her are an insufficient basis for her harassment claim. The *Szany* court analyzed the third element of a sexual harassment claim. There, the court found that a single incident over many years of a slap on the buttocks by a co-worker of the same rank was not severe or pervasive and therefore insufficient to serve as a basis for a claim of sexual harassment. *Szany*, 2020 WL 2767356 at *14–16. Defendant argues that the Court should grant summary judgment in its favor because the incidents at issue in the instant case are akin to the slap discussed in *Szany*. (Doc. 25, pgs. 8–10).

Defendant's reliance on *Szany* is misplaced. The conduct Smith complains of in the instant case is distinguishable. Here, Smith complains of two separate incidents involving Greene in the short amount of time she worked for the Defendant: the slap on her buttocks and later Greene's attempt to kiss her. Moreover, Greene was Smith's direct supervisor, a factor the Supreme Court views as magnifying the severity of the conduct. *See Ellerth*, 524 U.S. at 763. These incidents, considered in the context of Greene's supervising authority over Smith and the short amount of time she had been working for Defendants, could lead a factfinder to deem Defendant's work environment hostile. A juror reasonably could interpret Greene's conduct as "sufficiently invasive, humiliating, and threatening to poison [Smith's] working environment." *See Hostetler v. Quality Dining*, 218 F.3d 798, 808-09 (7th Cir. 2000) (reversing trial court's grant of summary

5

judgment on a sexual harassment claim based on two incidents of an employee's forcible attempts to kiss the plaintiff, finding the conduct in question went "beyond the sort of casual contact which (if it were consensual) might be expected between friendly co-workers" and instead was of a "physical, intimate, and forcible character."). As such, Plaintiff's claim for sexual harassment survives Defendant's Motion for Summary Judgment.

### 2. Retaliation

Plaintiff's next claim is for retaliation in violation of Title VII. To establish such a claim, Plaintiff must show that "(1) [Smith] engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two." *Kodl v. Board of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). The parties here dispute the second and third prongs.

The two material adverse employment actions of which Plaintiff complains are that (1) Smith's hours were cut and (2) she was terminated. Regarding the cutting of Smith's hours, Defendant argues that no evidence demonstrates the required causal connection between her complaint to Morris after the slapping incident and her hours being cut. (Doc. 25, pgs. 11–12). Greene testified that he was not aware of Smith's complaints until her last day of employment. Further, Morris testified that she did not have any recollection of whether she spoke with Greene or anybody else about Smith's reporting of the slapping incident before her hours were cut. In response, Plaintiff contends that Greene's statement to Smith prior to cutting her hours accusing her of being unable to keep her mouth shut demonstrates a retaliatory motive that could reasonably

6

lead a factfinder to find the requisite causal connection between Smith's complaint and her hours being cut. (Doc. 31, pgs. 22–23).

With respect to Smith's termination of employment, Defendant argues that Smith quit after her leave request for surgery was denied when she left work in the middle of her shift. As such, Defendant contends that Smith's complaints about Greene bore no connection to the termination of her employment. (Doc. 25, pgs. 11–12). As described above, Plaintiff disputes that Smith quit, and contends that the call from Defendant's administrator Baker informing her that she was banned from the premises due to her allegations against Greene is clear evidence of the nexus needed between Smith's complaints and the termination of her employment. (Doc. 31, pgs. 22–23).

The Court finds that these disputes between the parties are questions appropriate for determination by a jury. Whether Smith's hours were cut by Greene in retaliation for her reporting of his alleged inappropriate conduct will require the weighing of witness testimony and other evidence by a factfinder. Despite Greene's express testimony that he did not learn of Smith's complaints against him until after he cut Smith's hours, a jury could afford greater credit to Smith's testimony that Greene accused her of being unable to keep her mouth shut as a pretense for that adverse employment action. Similarly, whether Smith was terminated as a result of her call with Baker informing her that she was barred from the premises, or that Smith quit by leaving work mid-shift, presents a material factual dispute inappropriate for judicial determination. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to both of Plaintiff's Title VII harassment and retaliation claims.

### 3.  Failure to Accommodate Under the ADA

Plaintiff also brings a claim against Defendant for failure to accommodate Smith under the ADA. To demonstrate a claim for failure to accommodate under the ADA, a plaintiff must show: (1) they are a qualified individual with a disability; (2) the employer was aware of the disability; (3) and the employer failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005)). Plaintiff can prove that Smith is disabled under the ADA by demonstrating that (1) she has an impairment that substantially limits one or more major life activities, (2) she has a record of the impairment, or (3) she is regarded as having such an impairment by her employer. 42 U.S.C. § 12102(2)(A)). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage […]. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). An impairment "need not prevent, or significantly or severely restrict," the individual from performing a major life activity to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ii); *see also Richardson v. Chicago Transit Authority*, 926 F.3d 881, 888-89 (7th Cir. 2019) (providing that Congress's emphasized when passing the ADA Amendments Act of 2008 that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.").

The parties dispute whether Smith had a disability. Defendant argues Smith's direct testimony shows (1) she was able to walk, (2) the injury did not restrict her ability to work, (3) she did not need assistance to perform her work, and (4) the injury did not make daily activities difficult. As such, Defendant posits that Smith was not substantially

limited in performing any major life activity. Defendant contends the Court should find that Smith did not have a disability as a result. (Doc. 25, pgs. 6–7).

But Plaintiff here easily clears the low bar of demonstrating that Smith's impairment is a disability. Smith's testimony that she informed Defendant in her job interview that she would need time off for ankle surgery demonstrates that she knew her injury was serious enough such that it would require surgery and limit her availability to work. Additionally, the medical records attached to Plaintiff's Response detail the pain and difficulty Smith suffered when engaged in major life activities such as walking and squatting down. (Docs. 32-1, 32-2). Such evidence could reasonably lead a factfinder to conclude that Smith's impairment "substantially limits" a major life activity or, *a fortiori*, that a record of the impairment exists, and therefore conclude that Smith was a qualified individual with a disability under the ADA.

Defendant's Motion does not challenge whether it was aware of Smith's claimed disability or whether it failed to reasonably accommodate the disability. (Doc. 25, pgs. 6–7; Doc. 33, pgs. 17–18). Accordingly, Plaintiff's claim that Defendant failed to accommodate Smith in violation of the ADA survives Defendant's Motion.

### 4. Constructive discharge under ADA

Plaintiff brings a final, alternative claim of constructive discharge in the event that a jury determines that Smith quit by leaving work mid-shift and was not terminated by Defendant. "When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to a constructive discharge." *EEOC v. Univ. of Chicago*

9

*Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002). Plaintiff must show that Smith's working conditions had become intolerable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("And a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'"). "Working conditions become intolerable 'when the employer's actions communicate to the employee that she immediately and unavoidably will be terminated.'" *Ziccarelli v. Dart*, 35 F.4th 1079, 1091 (7th Cir. 2022); *see also Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 502 (7th Cir. 2010); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008).

Plaintiff argues that if a jury finds that Smith quit by leaving work in the middle of her shift, she only did so because of Defendant's failure to accommodate her disability. Defendant denied Smith's request for FMLA leave for her ankle surgery because she had not yet worked at Helia long enough to qualify for FMLA leave. Smith claims she was told that the only way she could take the time off for her surgery was to resign and then reapply for her job after the surgery. (Doc. 31, pgs. 31–32). Plaintiff states that because Smith was advised that the only option for her to get her surgery was to resign and reapply, "a reasonable employee in [Smith]'s shoes would have believed that had she not resigned, she would have been terminated." (Doc. 31, pg. 32) (citing *Univ. of Chi. Hosps.*, 276 F.3d at 332). Defendant contends that Smith's working conditions had not become intolerable and that her termination was not imminent because Smith could have kept her job by waiting to have her surgery until she was eligible for FMLA. (Doc. 33, pg. 19).

The Court finds that Plaintiff has demonstrated with more than just conjecture or speculation that Smith could have felt that her working conditions had become

10

intolerable. A reasonable juror may find that Smith's surgery could not wait for her to be eligible for FMLA leave and therefore conclude that Smith saw her termination as imminent if she were to go ahead with her surgery. Further, evidence relating to Plaintiff's claim of harassment and retaliation may provide a reasonable factfinder additional insight into whether Smith's working conditions were indeed intolerable. Accordingly, Plaintiff's alternative claim of constructive discharge presents a material factual dispute inappropriate for judicial determination and survives Defendant's Motion for Summary Judgment as a result.

## CONCLUSION

For the reasons stated above, Defendant Helia's Motion for Summary Judgment (Doc. 25) is **DENIED**.

**SO ORDERED.**

Dated: May 6, 2026                    /s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

11